**PROGRESS TAILORING CO. et al. v. FEDERAL TRADE COMMISSION.**

No. 8411.

Circuit Court of Appeals, Seventh Circuit.

Jan. 28, 1946.

104

Frank W. Sullivan, of Chicago, Ill., for petitioners.

William T. Kelley, Chief Counsel, Federal Trade Commission, and Donovan Divet, Asst., Federal Trade Commission, both of Washington D., C., for respondent.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is a petition to review, set aside, or modify a cease and desist order of the Federal Trade Commission, upon a complaint ·charging that petitioners have engaged in unfair methods of competition and unfair and deceptive acts and practices in commerce in violation of the Federal Trade Commission Act § 5, as amended 15 U.S.C.A. § 45.

The substance of the charges material under the points made here is that petitioners have violated the statute by disseminating false and misleading representations that they are manufacturers of the clothing which they sell, that they sell such clothing at wholesale prices, and that they give a suit of clothes "free" to salesmen accepting employment with them.

Petitioners answered the complaint, and after the matters involved in the charges had been heard upon the complaint and answer, the testimony of witnesses and supporting documentary evidence, the Commission, upon substantial evidence appearing in the record, found that petitioners, in competition with other merchants who sell similar goods, are all engaged in interstate commerce in the sale and distribution of men's suits and coats.

Petitioners act in conjunction with each other. They employ salesmen who sell their garments to the public, and in soliciting the services of these salesmen, they place advertisements in magazines, newspapers, and periodicals which have an interstate circulation. In the advertisements they represent that a free suit will be given to such salesmen. After prospective salesmen answer the preliminary advertisements, petitioners mail circulars to the inquirer in which they continue to refer to the suits as "free" but in which they also explain, in comparatively inconspicuous type, that the suit is not free but is sold to the salesman in return for his services. According to these circulars, if they are read and analyzed, the salesman will receive a commission for each garment he sells, and if he sells a certain number of garments, he will receive a suit for himself. The salesman must sell the required number of garments and pay petitioners their money before petitioners will deliver the suit to him. Petitioners make a profit on the entire transaction with each salesman after taking into consideration the cost of the suit delivered to the salesman for his services.

Upon these findings of fact the Commission concluded that the acts and practices of petitioners were unfair and deceptive, all to the prejudice and injury of the public and of petitioners' competitors and constituted unfair methods of competition in commerce, and entered an order that petitioners, among other things, cease and desist from: "Using the term 'free' or any other term of similar import or meaning to designate, describe, or refer to wearing apparel or other items of merchandise which are furnished as compensation for services rendered."

Petitioners make the point that the Commission is an administrative body possessing only such powers as are granted by the statute, Arrow-Hart & H. E. Co. v. Federal Trade Commission, 291 U.S. 587, 54 S.Ct. 532, 78 L.Ed. 1007, and that § 5 of the Act authorizes the Commission to proceed only against business practices employed in interstate commerce. Federal Trade Commission v. Bunte Bros., Inc., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881. They argue that their advertisement seeking a salesman, who may later engage in furthering interstate commerce, does not constitute interstate commerce, and that the Commission, because of lack of any grant of power over such matters, is without jurisdiction. We are of the opinion that under the circumstances here appearing, the advertisements are a part of the preliminary negotiations leading up to a sale in interstate commerce. They cannot be separated from the final sale, and are themselves a part of interstate commerce.

There can be no doubt that the sale of a suit by a seller in one State to a buyer in another State is a sale in interstate commerce. To constitute a sale, it is not necessary that the price be money only. 46 Am.Jur. § 60, page 251. In our case the advertisements offered a free suit, and when replies to or inquiries concerning these offers were received from prospective salesmen, petitioners mailed answers to inquirers offering to sell a suit to the prospective salesmen in return for their services. However, petitioners required the salesman to make payment for the suit with his services before the suit was delivered. Thus it is clear that these preliminary negotiations were all an essential part of the entire transaction.

Moreover, all interstate commerce is not sale of goods. Of course, importation into one State from another is the indispensable element, the test, of interstate commerce; but every negotiation and dealing between citizens of different States which contemplates and causes such importation, whether it be goods or information, is a transaction of interstate commerce. Butler Bros. Shoe Co. v. United States Rubber Co., 8 Cir., 156 F. 1, 17; International Text-Book Co. v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678, 18 Ann.Cas. 1103; and Furst v. Brewster, 282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478.

Petitioners next assert that this proceeding is not in the interest of the public.

The argument is that the public interest involved must be specific and substantial, and petitioners make the point that there is no evidence that any salesman engaged was ever deceived, that the ultimate purchaser was in any way affected by the advertisement, and that competitors were injured.

To be sure, the purpose of the Act is to protect the public and a substantial public interest must appear, but since the amendment of § 5 of the Act, March 21, 1938, 52 Stat. 111, 15 U.S.C.A. § 45, the Commission has had jurisdiction of all cases in commerce affecting the public interest whether or not competition is involved; hence it is no longer necessary to show competition, if there is an act or practice in commerce inimical to the public interest. Wolf v. Federal Trade Commission, 7 Cir., 135 F.2d 564, 567. As to the argument that no salesman was ever deceived, we need only to say that it is sufficient to show that the advertisements had a tendency or capacity to deceive, Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655; D. D. D. Corporation v. Federal Trade Commission, 7 Cir., 125 F. 2d 679, 682. The purpose of the Act is "to prevent potential injury by stopping unfair methods of competition in their incipiency," Federal Trade Commission v. Raladam Company, 316 U.S. 149, 152, 62 S.Ct. 966, 968, 86 L.Ed. 1336, and actual deception of purchasers need not be shown. Koolish v. Federal Trade Commission, 7 Cir., 129 F.2d 64, 65; Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 2 Cir., 143 F.2d 676, 680; Perloff v. Federal Trade Commission, 3 Cir., 150 F.2d 757, 759; and Keller v. Federal Trade Commission, 7 Cir., 132 F. 2d 59, 61. The Commission may require advertisements to be so carefully worded as to protect the most ignorant and unsuspecting purchaser, Charles of the Ritz Distributors Corp. v. Federal Trade Commission, supra, 143 F.2d 679, and a statement in an advertisement which is totally false cannot be qualified or modified. H. N. Heusner & Son v. Federal Trade Commission, 3 Cir., 106 F.2d 596.

The substantial evidence also reveals and the Commission in its finding of fact found that the garments that petitioners sell and distribute are all manufactured by Fort Wayne Tailoring Company, not a party to these proceedings. Fort Wayne

charges Progress for making the garments and it in turn makes a charge against the other petitioners for the garments which they sell. Fort Wayne and the other petitioners are all wholly owned subsidiaries of Progress and are under the control and direction of Progress' managing officers.

Stone-Field has advertised: "We Tailor Every Garment." Gibson has advertised: "All Middlemen's Expenses Are Eliminated By Our Manufacturer-To-Wearer Policy. A Challenge To Retailers." The other petitioners all use the phrase "Tailoring Company" as part of their corporate names. Petitioners do not sell their garments at wholesale, but include in the price paid by purchasers retailing costs, commissions to salesmen, and charges of Fort Wayne for manufacture. Progress admits having represented: "We Are Exclusively Wholesale Tailors Order One Of These Fine Progress Suits Yourself, If You Wish, At Wholesale Prices."

The fifth paragraph of the order provided that petitioners cease and desist from representing themselves as wholesale tailors or that their garments are supplied to purchasers at wholesale prices or that they are engaged in any business other than the sale of garments at retail.

Now the contention is made that membership in that family of corporations should entitle any of the petitioners to advertise that it manufactures the garments itself, and they argue that since Progress does directly and absolutely control a clothing manufacturing plant operated by Fort Wayne, the Commission erred in entering the order. Suffice it to say that corporate entity will be disregarded only when there are controlling reasons for doing so. 18 C.J.S., Corporations, § 6, page 378. Here the deception of the public is in no way affected by the corporate relationship, nor will disregarding the relationship correct the evil. Hence we agree with counsel for the Commission that there is no reason for disregarding the actual corporate entities and treating them as one.

Another point raised by petitioners is that the complaint did not charge Progress with having represented itself as wholesale tailors and, since the complaint did not specifically allege that Progress had misrepresented itself as being a manufacturer, the order is too broad. We have examined the complaint and think it sufficient,

and are of the opinion, in the circumstances here appearing, that the order is valid. National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 436, 61 S.Ct. 693, 85 L.Ed. 930.

The Commission's order is affirmed and an enforcement decree will be entered. It is so ordered.